UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

EMILY BRESLIN,
    emilycb913@gmail.com
    [address submitted pursuant to LCvR 5.1(c)]

    Plaintiff,

v.

UNITED STATES DEPARTMENT OF EDUCATION
    400 Maryland Avenue, SW
    Washington, D.C. 20202

LINDA MCMAHON, *in her official capacity as Secretary of Education*,
    400 Maryland Avenue, SW
    Washington, D.C. 20202

    Defendants.

RECEIVED
Mailroom
DEC 15 2025
Angela D. Caesar, Clerk of Clerk
U.S. District Court District of Columbia

Case: 1:25-cv-04380
Assigned To : AliKhan, Loren L.
Assign. Date : 12/15/2025
Description: Pro Se Gen. Civ. (F-DECK)

## COMPLAINT

Plaintiff brings this action under the Administrative Procedure Act to challenge the United States Department of Education's failure to credit months of qualifying public service toward Public Service Loan Forgiveness of Plaintiff's student loans.

I. **The Parties to This Complaint**

    A. **The Plaintiff**

    1.     Plaintiff is a natural person who resides, and at all relevant times to this action has resided, in the United States. Plaintiff owes federal student loan debt, which Plaintiff has been paying for over 10 years without delinquency or default while pursuing Public Service Loan Forgiveness ("PSLF").

1

### B. The Defendants

2. Defendant United States Department of Education (the "Department") is a federal agency headquartered in the District of Columbia with its principal office located at 400 Maryland Avenue, SW, Washington, D.C. The Department is responsible for administering federal student loan and grant programs in the United States.

3. Defendant Linda McMahon is the Secretary of Education. Plaintiff sues Secretary McMahon solely in her official capacity, in which capacity she has the ultimate responsibility for the activities of the Department, including the actions complained of herein. Secretary McMahon maintains an office at 400 Maryland Avenue, SW, Washington, D.C. 20202.

## II. Jurisdiction and Venue

4. This Court has subject matter jurisdiction over this action because it is a case arising under federal law, *see* 28 U.S.C. § 1331, and because it is a case to compel federal agencies and officers to perform their duty, *see* 28 U.S.C. § 1361.

5. The relief requested herein is authorized by the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02.

6. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because this is a civil action in which one of the defendants is an officer of the United States who resides in this judicial district or an agency of the United States that resides in this judicial district and because a substantial part of the events giving rise to these claims occurred in this district.

## III. General Allegations

7. Public servants who have worked for ten years in eligible jobs while making eligible payments on their student loans have a statutory entitlement to cancellation of their student loans. 20 U.S.C. § 1087e(m)(1).

8. The PSLF statute states that the Secretary of Education "shall cancel the balance of interest and principal due . . . on any eligible Federal Direct Loan" for a borrower who (1) "has made 120 monthly payments on the eligible Federal Direct Loan after October 1, 2007" and (2) "has been employed in a public service job during the period in which the borrower ma[de] each of the 120 payments." 20 U.S.C. § 1087e(m)(1).

9. The Department promulgated a regulation to implement the PSLF program, codified at 34 C.F.R. § 685.219(c)(2), that expounds on the circumstances in which a borrower is "considered to have made monthly payments."

10. According to this regulation, a borrower is considered to have made a monthly payment for each month that the borrower's loan spends in "[a]dministrative forbearance or mandatory administrative forbearance under [34 C.F.R.] § 685.205(b)(8) or (9)." 34 C.F.R. § 685.219(c)(2)(v)(H).

11. The Department's regulations provide that it will permit the temporary cessation of payments in certain specific circumstances listed in 34 C.F.R. § 685.205(b) by placing loans in a mandatory "administrative forbearance."

12. The period of time a loan is placed in a mandatory administrative forbearance while the "Secretary has authorized forbearance due to a national military mobilization or other local or national emergency" under 34 C.F.R. § 685.205(b)(8) counts toward the 120-month PSLF requirement. 34 C.F.R. § 685.219(c)(2)(v)(H).

13. A period of time for up to 60 days while the Secretary "collect[s] and process[es] documentation supporting the borrower's request for a deferment, forbearance, change in repayment plan, or consolidation loan" under 34 C.F.R. § 685.205(b)(9) counts toward the 120-month PSLF requirement. 34 C.F.R. § 685.219(c)(2)(v)(H).

3

14. The Department also has flexibility to place borrowers' loans into a discretionary "administrative forbearance" under 34 C.F.R. § 685.205(b) in circumstances other than the ones specifically enumerated in that provision.

15. Time spent in such a discretionary "administrative forbearance" counts toward the 120-month PSLF requirement under 34 C.F.R. § 685.219(c)(2)(v)(H).

16. The "period of time a loan is put into forbearance to resolve a servicing issue" counts toward the 120-month PSLF requirement.

17. Such a forbearance for "Remediation of Servicing Issues," or the "period of time a loan is put into forbearance to resolve a servicing issue," is a discretionary administrative forbearance under 34 C.F.R. § 685.205(b).

18. Plaintiff's initial master promissory note informed Plaintiff of Plaintiff's PSLF rights, stating that "A public service loan forgiveness program is also available. Under this program, the remaining balance due on your eligible Direct Loan Program loans may be cancelled after you have made 120 payments on those loans (after October 1, 2007) under certain repayment plans while you are employed in certain public service jobs."

A. **Plaintiff's Employment**

19. Plaintiff has been employed full-time in a PSLF-qualifying public service job for more than 120 months while Plaintiff's loans have been in repayment.

20. Plaintiff has submitted certifications from Plaintiff's employer to the Department demonstrating that Plaintiff has been employed full-time in a PSLF-qualifying public service job for more than 120 months while Plaintiff's loans have been in repayment.

21. These employer certifications included a certification from Plaintiff's employer that Plaintiff was employed full-time from June 1, 2024 to July 1, 2025.

### B. MOHELA's Servicing of Plaintiff's Loans in 2023

22. Plaintiff's student loans are currently serviced by MOHELA and have been serviced by MOHELA since August 2022.

23. In October 2023, MOHELA failed to send timely billing statements to more than 2.5 million borrowers as their loans returned to repayment after a forbearance during the COVID-19 pandemic.

24. MOHELA failed to send a timely October 2023 billing statement to Plaintiff.

25. Plaintiff did not receive an October 2023 billing statement until after MOHELA had automatically debited Plaintiff's bank account for the October 2023 payment.

26. Plaintiff's October 2023 payment was in a different amount than Plaintiff's prior payments and MOHELA did not inform Plaintiff of the new amount before automatically debiting Plaintiff's bank account for the October 2023 payment.

27. The Department advised in a November 9, 2023 press release that "[i]n certain circumstances where a borrower's progress toward loan forgiveness may be harmed by potential servicer errors, the Department has directed servicers to count those periods in administrative forbearance toward Public Service Loan Forgiveness . . . ."

28. The Department recognized MOHELA's failure to send timely billing statements in the fall of 2023 as a "servicing issue" and placed affected borrowers' loans in an administrative forbearance that it counted toward PSLF.

29. The Department withheld $7.2 million from MOHELA for its failure to send timely billing statements.

30. In June 2024, MOHELA sent Plaintiff an email stating, "Our records indicate that your October billing statement was sent beyond the normal 21 days prior to the due date."

5

31. The email further stated, "you may contact us within 90 calendar days of the date of this notice to request a refund and forbearance will be applied for that month."

32. On or about June 11, 2024, Plaintiff sent MOHELA a letter stating, "To the extent that my account should have been placed in forbearance for October 2023 and/or any subsequent months, I respectfully request (1) a refund of all payment(s) for the affected month(s); (2) that my account be placed in forbearance for the affected month(s); and (3) that the relevant records be updated to reflect that the affected month(s) will count as credit towards loan forgiveness through Public Service Loan Forgiveness once I have submitted the required employment certifications."

33. On or about June 11, 2024, MOHELA sent Plaintiff a letter acknowledging the request and stating, "[o]nce MOHELA has processed your request, it will be forwarded to U.S. Treasury for issuance."

34. The letter also stated, "Be advised, any forbearance placed for a refund or for this remediation will count toward income-driven repayment forgiveness and Public Service Loan Forgiveness, assuming all other requirements are met."

    **C.**    **MOHELA's Servicing of Plaintiff's Loans During Its Transition to a New Servicing Platform in June 2024**

35. MOHELA's June 11, 2024 letter further stated, "Please be advised, your account begins the transition to our new loan servicing platform FISERV on 06/11/2024. During this transition, your loan information may be temporarily unavailable."

36. MOHELA was unable to accept payments through its website or by phone during this transition to a new loan servicing platform.

37. The correspondence from MOHELA to Plaintiff about the servicing platform transition did not indicate that the transition would cause a disruption in MOHELA's ability to

6

receive payments.

38. Although Plaintiff's account was enrolled in automatic debit, MOHELA did not debit Plaintiff's June 2024 payment from Plaintiff's bank account.

39. Plaintiff called MOHELA customer service on June 26, 2024 to inquire about the status of Plaintiff's payment.

40. A MOHELA customer service agent advised Plaintiff that Plaintiff's next payment would be debited on August 19, 2024.

41. MOHELA further advised Plaintiff that Plaintiff's loans would be in administrative forbearance for the months of June 2024 and July 2024.

42. Finally, MOHELA advised Plaintiff that the administrative forbearance for the months of June 2024 and July 2024 would be credited toward PSLF.

43. Plaintiff sent MOHELA a confirmatory letter on or about June 26, 2024.

44. MOHELA did not respond to the letter to correct Plaintiff's statements.

45. During June 2024 and July 2024, by placing Plaintiff's account in administrative forbearance due to MOHELA's inability to accept payments, MOHELA and/or the Department blocked Plaintiff from making monthly payments as required to obtain PSLF credit under 34 C.F.R. § 685.219(c)(2)(i)-(iv).

D. **SAVE Income-Driven Repayment Plan Litigation**

46. The Department is statutorily required to provide an "income-based repayment program" under which an eligible borrower's monthly payments are calculated pursuant to a statutory formula. 20 U.S.C. § 1098e(b).

47. The Department also has statutory authority to provide "income contingent repayment plans," "with varying annual repayment amounts based on the income of the

borrower, paid over an extended period of time prescribed by the Secretary, not to exceed 25 years." 20 U.S.C. § 1087e(d)(1)(D).

48. The statutory text describing the income contingent repayment plan does not provide a specific formula for calculating loan payments and instead delegates the authority to determine payment amounts to the Secretary. 20 U.S.C. § 1087e(e)(4).

49. Relying on this authority, the Department promulgated regulations to create several income contingent repayment plans.

50. As of April 2024, the Department had three such plans, (1) an "Income Contingent Repayment Plan" (the "ICR Plan"); (2) a "Pay as You Earn" plan (the "PAYE Plan"); and (3) the "Saving on a Valuable Education" plan (the "SAVE Plan"). *See* 34 C.F.R. § 685.209.

51. As of April 2024, Plaintiff was enrolled in the SAVE Plan.

52. In April 2024, Missouri and several other states sued to challenge the SAVE Plan.

53. The lawsuit did not challenge the statutory "income-based repayment program" in 20 U.S.C. § 1098e(b) or its statutory formula.

54. The lawsuit also did not challenge the ICR Plan or the PAYE Plan.

55. The lawsuit sought a stay or preliminary injunction against implementation of the SAVE Plan.

56. The district court granted the request in part, enjoining loan forgiveness provisions of the SAVE Plan while leaving the remaining provisions in effect.

57. On July 18, 2024, the Eighth Circuit Court of Appeals granted the states' emergency motion for an administrative stay "prohibiting the appellees from implementing or acting pursuant to the Final Rule."

58. Upon information and belief, on July 19, 2024, the day after the Eighth Circuit

granted the administrative stay, the Department placed all borrowers who had been making payments under the SAVE Plan into an administrative forbearance.

59. On August 9, 2024, the Eighth Circuit Court of Appeals enjoined the federal officials "from any further forgiveness of principal or interest, from not charging borrowers accrued interest, and from further implementing SAVE's payment-threshold provisions."

60. On February 18, 2025, the Eighth Circuit Court of Appeals affirmed the district court's injunction and instructed that court to modify the injunction to enjoin the entire SAVE Rule as well as the hybrid rule.

61. On February 26, 2025, the Department directed all loan servicers to stop accepting and processing income-driven repayment plan applications.

62. The Department posted a notice on its website stating, "Application Unavailable. A federal court issued an injunction preventing the U.S. Department of Education from implementing the Saving on a Valuable Education (SAVE) Plan and parts of other income-driven repayment (IDR) plans. As a result, the IDR and online loan consolidation applications are temporarily unavailable."

63. After the American Federation of Teachers filed a complaint against the Department on March 18, 2025, the Department announced that it would restore the income-driven repayment plan application by March 26, 2025 and begin processing applications by May 10, 2025.

E.   **Servicing of Plaintiff's Loans During SAVE Plan Litigation**

64. Plaintiff's loans were already in administrative forbearance in July 2024 because of the MOHELA servicing platform transition.

65. Plaintiff's loans remained in administrative forbearance after the Eighth Circuit

Court of Appeals granted the administrative stay on July 18, 2024 and the Department placed all borrowers who had been making payments under the SAVE Plan into administrative forbearance.

66. Plaintiff's account with MOHELA showed monthly payments of $0 due.

67. On or about September 16, 2024, Plaintiff submitted an application to MOHELA to transfer to an income-driven repayment plan other than the SAVE Plan.

68. On or about March 5, 2025, Plaintiff submitted another application to MOHELA to transfer to an income-driven repayment plan other than the SAVE Plan and included a copy of Plaintiff's 2024 tax return.

69. MOHELA posted a message on its website stating, "If you applied before April 27, 2025, your application didn't include income info. Please reapply at StudentAid.gov for faster processing. Your old application will then be canceled automatically."

70. MOHELA provided no additional details as to why borrowers who applied before April 27, 2025 would need to reapply, particularly those who already included income documentation with their application.

71. Upon information and belief, no other Department loan servicer (including Nelnet, Edfinancial, or Aidvantage) posted a similar message on its website.

72. On or about May 21, 2025, Plaintiff submitted a third application to MOHELA to transfer to an income-driven repayment plan other than the SAVE Plan.

73. As of July 1, 2025, MOHELA had not processed any of Plaintiff's applications to enroll in an income-driven repayment plan other than the SAVE Plan.

74. At no point did the Eighth Circuit Court of Appeals or any other court enjoin the Department from implementing the income-based repayment program under 20 U.S.C. § 1098e(b).

75. At no point did the Eighth Circuit Court of Appeals or any other court enjoin the Department from implementing the ICR Plan or the PAYE Plan.

76. At no point did the Eighth Circuit Court of Appeals or any other court enjoin the Department from taking the actions needed to enroll Plaintiff in an income-driven repayment plan other than the SAVE Plan.

77. Upon information and belief, Plaintiff's loans instead remained in administrative forbearance because of servicing issues.

78. MOHELA amassed a backlog of over 460,000 income-driven repayment plan applications as of October 2024.

79. MOHELA initially did not notify the Department of the backlog.

80. By October 2024, Federal Student Aid "determined, through its oversight of federal student loan servicers, that MOHELA has not consistently met the Department's standards for serving borrowers. MOHELA's continued challenges have resulted in less-than-satisfactory quality of servicing for borrowers."

81. The Department acknowledged this servicing issue by temporarily stopping assigning accounts to MOHELA.

82. On June 24, 2025, Federal Student Aid's website said that borrowers previously enrolled in the SAVE Plan were in forbearance "because your loan servicer is not currently able to bill you at an amount required by the court injunction. You will be in this forbearance until servicers are able to accurately calculate monthly payment amounts or the court reaches a decision on the availability of the SAVE Plan."

83. As recently as June 24, 2025, almost a year after the Department placed all borrowers who had been making payments under the SAVE Plan into administrative forbearance,

the website still pointed to servicing issues, further stating that "[a]lthough the IDR application is now available, loan servicers are still updating their systems in accordance with the court's actions."

84. Indeed, the servicer backlog of income-driven repayment plan applications increased after October 2024.

85. As of April 30, 2025, MOHELA and the Department's other loan servicers had a total of 1,985,726 income-driven repayment plan applications pending.

86. The servicers only decided 79,349 applications in the month of April 2025.

87. As of May 31, 2025, MOHELA and the Department's other loan servicers had a total of 1,582,641 income-driven repayment plan applications pending.

88. The servicers decided 285,694 applications in the month of May 2025.

89. As of June 30, 2025, MOHELA and the Department's other loan servicers had a total of 1,511,504 income-driven repayment plan applications pending.

90. The servicers decided 186,731 applications in the month of June 2025.

91. Between September 2024 and July 2025, by failing to enroll Plaintiff in a repayment plan and instead leaving Plaintiff's account in administrative forbearance, MOHELA and/or the Department blocked Plaintiff from making monthly payments as required to obtain PSLF credit under 34 C.F.R. § 685.219(c)(2)(i)-(iv).

F. **Plaintiff's Public Service Loan Forgiveness Application**

92. On or about July 1, 2025, Plaintiff submitted a Public Service Loan Forgiveness (PSLF) & Temporary Expanded PSLF (TEPSLF) Certification & Application to the Department.

93. Plaintiff checked the box stating, "I believe I qualify for forgiveness now and request a forbearance while my application is being processed. I understand this period of

forbearance will not count toward forgiveness, if the Department determines I am not yet eligible for forgiveness."

94. On or about July 12, 2025, the Department sent a letter to Plaintiff stating, "We are pleased to provide you with an update about your progress toward Public Service Loan Forgiveness (PSLF) or Temporary Expanded PSLF (TEPSLF)."

95. The letter stated that Plaintiff had made 109 qualifying payments.

96. Plaintiff's studentaid.gov account states that the months of June 2024 through September 2024 and December 2024 through June 2025 are "Ineligible" for PSLF because "Forbearance on Due Date."

97. Upon information and belief, the Department determined that the months of October 2024 and November 2024 were eligible for PSLF credit because they were a mandatory administrative forbearance under 34 C.F.R. § 685.205(b)(9) for a period of time for up to 60 days while MOHELA processed documentation supporting Plaintiff's September 16, 2024 request for a change in income-driven repayment plan. *See* 34 C.F.R. § 685.219(c)(2)(v)(H).

98. On or about July 14, 2025, Plaintiff submitted a Public Service Loan Forgiveness Reconsideration request.

99. Plaintiff's request stated, "If the letter dated 7/12/2025 providing an 'update about your progress toward Public Service Loan Forgiveness' is intended as a denial of my application for forgiveness under 34 CFR sec. 685.219(e)(8), I respectfully request reconsideration under 34 CFR sec. 685.219(g) for the reasons stated in the attached application. If it is not a denial, I respectfully request that the Department review the application and issue a decision."

100. The Department sent Plaintiff a confirmation email assigning case number #30158206 to Plaintiff's request.

101. Plaintiff has received no further communication from the Department in response to the request.

102. MOHELA sent Plaintiff a letter stating that the "deferment or forbearance to postpone payments" on Plaintiff's student loans would end on October 31, 2025.

103. The letter further stated that Plaintiff's payments would restart in November 2025.

## CAUSES OF ACTION

### COUNT I – 5 U.S.C. § 706(2)(A)
### (Arbitrary and Capricious Agency Action and Agency Action Not in Accordance with Law in Violation of the Administrative Procedure Act)

104. Plaintiff repeats and incorporates by reference each of the foregoing allegations as if fully set forth herein.

105. The Administrative Procedure Act provides a cause of action in federal district court for any person aggrieved by final agency action. *See* 5 U.S.C. §§ 702-704.

106. The APA provides that the reviewing court shall hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. 5 U.S.C. § 706(2)(A).

107. The Department's letter to the Plaintiff dated July 12, 2025 constitutes a final agency action denying Plaintiff's PSLF application under the APA.

108. No further exhaustion of remedies for the issues raised by this lawsuit is necessary.

109. Defendants have acted in a manner that is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law by failing to credit the months of June 2024 through September 2024 and December 2024 through June 2025 toward PSLF under 34 C.F.R. § 685.219(c)(2)(v)(H) as months spent in "[a]dministrative forbearance or mandatory

administrative forbearance under [34 C.F.R.] § 685.205(b)(8) or (9)."

110. The Department's determination that these months did not qualify for PSLF was inconsistent with its regulations and thus not in accordance with law for the purposes of the APA.

111. The Department's determination should be set aside.

### COUNT II – 5 U.S.C. § 706(1)

### (Unreasonable Withholding of Action in Violation of Administrative Procedure Act)

112. Plaintiff repeats and incorporates by reference paragraphs 1 through 103 as if fully set forth herein.

113. The APA authorizes this Court to "compel agency action" that has been "unreasonably delayed." 5 U.S.C. § 706(1).

114. Plaintiff submitted a PSLF application on July 1, 2025.

115. Plaintiff received a letter from the Department on or about July 12, 2025.

116. On or about July 14, 2025, Plaintiff requested clarification from the Department; specifically, if the letter was not a denial of the application, Plaintiff requested that the Department issue a decision on the application, and if the response was a denial, Plaintiff requested that the Department reconsider the denial.

117. The Department has not responded to Plaintiff's July 14, 2025 request.

118. Nonetheless, MOHELA notified Plaintiff that Plaintiff's payments would be restarting in November 2025.

119. Requiring Plaintiff to keep making payments indefinitely until the Department decides Plaintiff's application and then requiring Plaintiff to wait for MOHELA to process an overpayment refund request if the application is granted prejudices Plaintiff.

120. Upon information and belief, MOHELA is taking up to a year to process refund

requests and submit them to the U.S. Treasury for payment.

121.  Plaintiff requested a refund on or about June 11, 2024.

122.  Plaintiff spoke with MOHELA customer service on July 30, 2025 and MOHELA had not initiated a refund as of that date.

123.  Plaintiff did not receive a refund check in the mail until November 13, 2025.

124.  The check was dated November 7, 2025.

125.  The enclosure indicated that the request was effective October 16, 2025.

126.  Upon information and belief, it only takes the U.S. Treasury a few weeks or less to process a refund once MOHELA initiates the refund.

**PRAYER FOR RELIEF**

Plaintiff respectfully requests that this Court:

(A)  Declare that the Defendants have violated the APA by unlawfully failing to credit the months of June 2024 through September 2024 and December 2024 through June 2025 toward PSLF under 34 C.F.R. § 685.219(c)(2)(v)(H) as months spent in "[a]dministrative forbearance or mandatory administrative forbearance under [34 C.F.R.] § 685.205(b)(8) or (9)."

(B)  Vacate and hold unlawful the Defendants' denial of Plaintiff's PSLF application.

(C)  Alternatively, compel the Defendants to issue a determination on Plaintiff's Public Service Loan Forgiveness Reconsideration request assigned case number #30158206.

(D)  Award fees and other expenses pursuant to 28 U.S.C. § 2412(d)(1).

(E)  Award such other relief as the Court deems just and proper.

**CERTIFICATION**

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper

purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

I am filing a notice with my address under seal simultaneously with this complaint pursuant to LCvR 5.1(c)(1). I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case. I am also filing a Motion for CM/ECF User Name and Password pursuant to LCvR 5.4(b)(2) with this complaint.

Dated: December 10, 2025

*Emily C. Breslin*

Emily Breslin
emilycb913@gmail.com